UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARSHPREET SINGH, | No. 1:25-cv-01543-DCJ-SCR |
| Plaintiff, | |
| v. | AMENDED ORDER |
| TONYA ANDREWS, et al., | |
| Defendants. | |

Petitioner, a native and citizen of India, entered the United States without inspection in March 2023, near Lukeville, Arizona. After a brief detention by immigration authorities, he was released on his own recognizance on March 21, 2023. On October 26, 2025, United States Immigration and Customs Enforcement ("ICE") officers detained him, purportedly pursuant to 8 U.S.C. § 1225(b). Petitioner is presently in ICE custody at the Golden State Annex Center in McFarland, California.

On November 6, 2025, United States Citizenship and Immigration Services ("USCIS") approved Petitioner's application for Special Immigrant Juvenile classification. On November 12, 2025, Petitioner filed a Petition for a Writ of Habeas Corpus along with a Motion for Temporary Restraining Order and Preliminary Injunction, arguing that he cannot be lawfully detained pursuant to 8 U.S.C. § 1225(b)

and that his present detention violates his due process rights, the Immigration and Nationality Act, the Administrative Procedure Act, federal regulations, and the Suspension Clause of the United States Constitution.

In numerous cases, district courts in this Circuit have applied a similar approach. Based on the substantial weight of authority and for the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Petitioner's Motion for Temporary Restraining Order. The Court orders Respondents to set a bond hearing within five (5) days of this Order but declines to order Petitioner's release. The Court will set a briefing schedule on the Motion for Preliminary Injunction.

## BACKGROUND

Petitioner Arshpreet Singh is a 20-year-old native and citizen of India. (Pet. (ECF No. 1) ¶ 81.) He entered the United States near Lukeville, Arizona, on or about March 15, 2023. (Notice to Appear ("NTA") (ECF No. 7) at 2.)[1] He was apprehended by immigration officials and served with a NTA on March 19, 2023. (*Id.*) The NTA charged Petitioner with removability under INA § 212(a)(6)(A)(i) because he was "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (*Id.* at 2). The initial detention was brief, and Petitioner was released pursuant to an Order of Release on Recognizance ("ORR"). (Pet. ¶ 83; ORR (ECF No. 6).) The ORR directed Petitioner to comply with certain conditions. (*See generally* ORR.) Thereafter, Petitioner applied for guardianship in the State of California and was placed under the legal custody of Dalvinder Singh. (*Id.* ¶84.) On April 25, 2025, Petitioner filed a Form I-360—Petition for Amerasian, Widow(er), or Special Immigrant—which USCIS approved on November 7, 2025, thereby conferring Special Immigrant Juvenile ("SIJ") status. (*Id.*) Petitioner awaits an available visa number to submit his

---

[1] The Petition varies slightly from the NTA, listing a different date and location of entry. The Court will rely on the date and location identified in the NTA.

2

application for adjustment of status to lawful permanent resident. (*Id.*) He has no criminal record or adverse immigration or removal history. (*Id.*)

On October 22, 2025, Petitioner received a phone call from his assigned deportation officer instructing him to appear for an-person appointment on Sunday, October 26, 2025. (*Id.* ¶ 85.) When Petitioner arrived at the appointment, he was detained by ICE officers and is now held without bond at the Golden State Annex Detention Center and faces removal. (*Id.* ¶¶ 85, 87.) Petitioner informed the officers of his SIJ status and presented his Employment Authorization Document as proof of his identity, but he was not released. (*Id.* ¶¶ 86, 87.)

Petitioner filed a Petition for Writ of Habeas Corpus along with a Motion for Temporary Restraining Order and Preliminary Injunction. (ECF Nos. 1, 3.) The Motion is fully briefed. (Opp'n (ECF No. 14); Reply (ECF No. 16.).) The parties filed declarations in support of the briefing. (Gallencamp Decl. (ECF No. 15); Kaur Decl. (ECF No. 17); Singh Decl. (ECF No. 18).) Petitioner requests that this Court (1) order Petitioner's immediate release; or, in the alternative, (2) order a constitutionally adequate § 1226(a) bond hearing within seven (7) days; (3) enjoin Respondents from transferring Petitioner outside the District pending resolution; (4) declare that Petitioner may remain in the United States to pursue adjustment of status based on his approved SIJ classification; and 5) stay removal proceedings pending completion of SIJ-related adjustment, or until further order of this Court. (Reply at 18.)

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are 'serious

questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted). The Ninth Circuit employs a sliding scale approach to the *Winter* factors, under which a strong showing on the balance of hardships may compensate for a lesser showing of likelihood of success. *See Where Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022).

## ANALYSIS

### I. Likelihood of Success on the Merits

Petitioner is likely to succeed on the merits of his claim that he has been unlawfully detained under 8 U.S.C. § 1225 and is instead subject to 8 U.S.C § 1226. Respondents assert Petitioner has been detained pursuant to Section 1225(b)(2) and, therefore, he is "an applicant [who] must be detained" and is not entitled to a bond hearing. (Opp'n at 5.) Petitioner counters that he is not subject to Section 1225 but rather is subject to Section 1226, which entitles him to a bond hearing.

Sections 1225 and 1226 both govern the detention and removal of noncitizens from the United States. However, Section 1225 provides for mandatory detention of certain individuals, while Section 1226 establishes a discretionary detention scheme. Section 1225 provides that a noncitizen "who is an applicant for admission . . . shall be detained." 8 U.S.C. § 1225(b)(2)(A). In contrast, under Section 1226's discretionary scheme, a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C § 1226(a). Pending this decision, the Attorney General may continue to detain the arrested individual or may release the individual on bond or conditional parole. 8 U.S.C § 1226(a)(2)(A)–(B). Section 1226(a) affords noncitizens a statutory right to a bond hearing before an immigration judge. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025) (citing 8 C.F.R. § 1236.1(d)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189,

1197 (9th Cir. 2022) (explaining that under "§ 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final").  "At that hearing, the noncitizen may present evidence of their ties to the United States, lack of criminal history, and other factors that show they are not a flight risk or danger to the community." *Bostock*, 779 F. Supp. 3d at 1256.

Though discretionary detention is the "default rule" under Section 1226, there are exceptions to Section 1226's discretionary scheme. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).  Section 1226(c) "carves out a statutory category of [noncitizens] who may not be released under § 1226(a)." *Id.* at 289.  Under Section 1226(c), the "Attorney General shall take into custody any [noncitizen] who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.* (citing 8 U.S.C. § 1226(c)(1)) (internal quotation marks omitted).

This Court agrees with Petitioner that he is likely subject to Section 1226(a)'s discretionary detention scheme rather than Section 1225(b)(2)'s mandatory detention scheme and, therefore, is entitled to a bond hearing.  Respondents argue Petitioner is an "applicant for admission" within the meaning of Section 1225.  (Opp'n at 5.)  This argument reflects a recent executive branch policy change directing federal immigration officials to seek expedited removal of a larger swath of noncitizens by classifying all noncitizens present in the United States as "applicant[s] for admission" under Section 1225.  *C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *5 (E.D. Cal. Nov. 3, 2025) (quoting *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *1–4 (N.D. Cal. Sept 12, 2025), describing this policy change).

This Court rejects Respondents' argument and finds that the applicability of these provisions is governed by when and where a noncitizen encounters immigration enforcement officials.  Courts in this Circuit have found that Section 1225 applies to those apprehended upon arrival to the United States while Section 1226 applies to

those already living within the United States. *See, e.g.*, *Bostock*, 779 F. Supp. 3d at 1257 (finding petitioner likely to succeed on merits of argument that 1225(b)(2)(A) "should be read to narrow mandatory detention under that subsection to noncitizens who are apprehended while seeking to enter the country, and that noncitizens already residing in the United States, including those who are charged with inadmissibility, continue to fall under the discretionary detention scheme in Section 1226") (internal quotation marks omitted); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO-HC, 2025 WL 3013328, at *6–7 (E.D. Cal. Oct. 27, 2025). This interpretation of these provisions is further supported by the canon against surplusage, a recent Supreme Court decision, and longstanding agency practice.

*First*, this interpretation is supported by the canon against surplusage. As explained above, Section 1226(c) creates a class of exceptions to Section 1226(a)'s "default" rule of discretionary detention. *See Jennings*, 583 U.S. at 288. Under Section 1226(c), those who have committed certain offenses are subject to mandatory detention. *See* 8 U.S.C. § 1226(c). For example, Section 1226(c) requires detention of a noncitizen who is inadmissible, that is "present in the United States without being admitted or paroled," and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of" specified criminal offenses. *See* 8 U.S.C. § 1226(c)(1)(E); § 1182(a)(6)(A)(i). Section 1225 requires detention of "applicant[s] for admission." 8 U.S.C. § 1225(b)(2)(a). If the government is correct that the term "applicants for admission" extends to all inadmissible noncitizens there would be no reason for Section 1226 to require detention of particular classes of inadmissible noncitizens. Therefore, the government's argument would render the whole of Section 1226(c) surplusage.

Respondents' interpretation of these provisions would similarly render recent amendments to this statute surplusage. As Petitioner highlights, in 2025 Congress enacted the Laken Riley Act, which added additional categories of individuals to those subject to mandatory detention under Section 1226(c). (Mot. at 10.) It would make

little sense for Congress to enact these amendments subjecting new individuals to mandatory detention if they were already subject to such detention pursuant to Section 1225. *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025) (explaining that "assuming any inadmissible noncitizen is an 'applicant for admission' who is 'seeking admission' (and, therefore, subject to mandatory detention under § 1225(b)(2)), would render the Riley Laken Act unnecessary"). At a minimum, Congress' enactment of the Laken Riley Act, which clearly contemplated that § 1226 applies generally to undocumented individuals who have been living in the United States, would constitute Congressional acquiescence in that longstanding interpretation of Sections 1225 and 1226. *See, e.g., United States v. Mays*, 430 F.3d 963, 967 (9th Cir. 2005).

*Second*, this interpretation of the statute is consistent with the Supreme Court's recent description of these provisions in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). In *Jennings*, the Supreme Court explained that "U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289. The Supreme Court described proceedings under Section 1225 as a process that "generally begins at the Nation's borders and ports of entry, where the government must determine whether a [noncitizen] seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. "Then, when discussing Section 1226, *Jennings* describes it as governing 'the process of arresting and detaining' noncitizens who are living 'inside the United States' but 'may still be removed,' including noncitizens 'who were inadmissible at the time of entry.'" *Bostock*, 779 F. Supp. 3d at 1258 (quoting *Jennings*, 583 U.S. at 288).

*Third*, this interpretation is consistent with longstanding agency practice. Until recently, the Department of Homeland Security ("DHS") consistently treated noncitizens apprehended while living in the United States as detained under Section

7

1226(a).  See *Bostock*, 779 F. Supp. 3d at 1258, 1260-61; *C.A.R.V.*, 2025 WL 3059549, at *5.  Executive Branch regulations implementing these provisions issued just six months after their enactment provide that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond determination."  62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).  As this interpretation "was issued roughly contemporaneously with the enactment of the statute and remained consistent over time," this "longstanding practice of the government—like any other interpretive aid —can inform a court's determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (cleaned up).

As Petitioner has been present in the United States for since March 2023, he is likely to succeed on the merits of his claim that he is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision.  See *J.A.C.P.*, 2025 WL 3013328, at *7 (holding petitioner was likely to succeed on the merits of their claim that they were not subject to mandatory detention under section 1225(b)(2)(A) under similar circumstances); *Bostock*, 779 F. Supp. 3d at 1261 (same).  Therefore, Petitioner is likely to succeed on the merits of his claim that he is subject to the procedures laid out by and entitled to the rights afforded under Section 1226(a), most notably, a bond hearing.

## II. Irreparable Harm

Petitioner will suffer irreparable harm in the absence of a temporary restraining order as he "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018).  The Ninth Circuit has acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families

as a result of detention." *Hernandez*, 872 F.3d at 995. Petitioner has thus established irreparable harm.

### III. Balance of the Harms & the Public Interest

The final two *Winter* factors merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "[I]n addition to the potential hardships facing [Petitioner] in the absence of an injunction," the court may consider "the indirect hardship to their friends and family members." *Hernandez*, 872 F.3d at 996 (quoting *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008)).

Here, the interests of equity and the public weigh in favor of Petitioner. Every day that Petitioner is in custody separates him from his community, counsel, and the ability to prepare his adjustment and asylum cases. A temporary restraining order also inflicts minimal harm to the government. Though Respondents have an interest in enforcing immigration laws, they have no interest in erroneously enforcing the wrong law, as they have done here. This Order instead furthers that interest through application of the correct law. Finally, this relief benefits the public. "[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022).

### IV. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Because the "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations,"

*Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.

## V. Scope

Under Federal Rule of Civil Procedure 65(d), every order granting an injunction must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). "[A]n injunction must be narrowly tailored . . . to remedy only the specific harms shown by [Petitioner], rather than 'to enjoin all possible breaches of the law.'" *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (quoting *Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983)). "Injunctive relief 'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *Bostock*, 779 F. Supp. 3d at 1263 (citing *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021)).

Respondents correctly argue that there is no right to release under § 1226(a) as the Attorney General "may continue to detain the arrested alien" or "may release the alien." (Opp'n at 5.) There is then the possibility of detention even after a bonding hearing. As such, the Court finds that the specific harm alleged—that Petitioner is "unlawfully barred from receiving a bond hearing under the proper statute—is remedied by granting [Petitioner's] request for a bond hearing under § 1226(a) and enjoining [Respondents] from denying bond on the basis that [Petitioner is] detained under § 1225(b)(2)." *Bostock*, 779 F. Supp. 3d at 1263.

## VI. Type of Bond Hearing and Burden of Proof

The Court next determines whether a pre-deprivation or post-deprivation bond hearing is appropriate. In granting a post-deprivation bond hearing under § 1226(a), the district court's analysis in *Rodriguez Diaz v. Kaiser*, No. 25-CV-05071-TLT, 2025 WL 3011852 (N.D. Cal. Sept. 16, 2025), is instructive. There, the petitioner had allegedly incurred six violations of his release conditions, including missed check-ins and home visits. *Id.* at *3–4. Following the petitioner's last missed home visit, he appeared for a

scheduled check-in. *Id.* The court found that the petitioner was entitled to a pre-deprivation hearing because each time that the petitioner "reported to ICE for a check-in" following one of his six alleged violations, "an ICE officer, at least implicitly, made a finding that [the petitioner] was not a flight risk." *Id.* at *13 (internal quotations omitted); *see E.A.T.B. v. Wamsley*, ---F. Supp.3d---, 2025 WL 1402130, at *5 (W.D. Wash. Aug. 19, 2025) ("That Petitioner's alleged violations occurred months before they were acted upon, and Petitioner attended multiple immigration court hearings where any violations could have been addressed but were not, undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable.").

Here, however, petitioner missed a home visit on July 2025, and Petitioner's declaration does not explain this absence. The record does not reflect that petitioner had an in-person check-in or immigration court hearing between that date and October 26, 2025, when he was detained. (Singh Decl. ¶¶ 5–6.). In these circumstances, a post-deprivation hearing is appropriate, as other courts have found. *See J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, at *16 (E.D. Cal. Oct. 16, 2025) (collecting cases).

Petitioner also requests that the Government bear the burden of proof. (Mot. at 16.) When a noncitizen is granted a bond hearing pursuant to § 1226(a), he ordinarily carries the burden to "establish to the satisfaction of the Immigration Judge . . . that he [ ] does not present a danger to persons or property, is not a threat to national security, and does not pose a risk of flight." *Hernandez*, 872 F.3d at 982. In *Rodriguez Diaz v. Garland*, the Ninth Circuit considered whether a noncitizen detained under § 1226(a) pending removal proceedings had a right to a second bond hearing where the government would have the burden to establish by clear and convincing evidence that his continued detention was justified. 53 F.4th at 1203. *Rodriguez Diaz* concluded that due process did not require that procedure, reasoning in part that:

11

> Nothing in this record suggests that placing the burden of proof on the government was constitutionally necessary to minimize the risk of error, much less that such burden shifting would be constitutionally necessary in all, most, or many cases. There is no reason to believe that, as a general proposition, the government will invariably have more evidence than the alien on most issues bearing on alleged lack of future dangerousness or flight risk.

*Id.* at 1212.

However, *Rodriguez Diaz* "held only that a noncitizen detained under section 1226(a) does not have a right to a second bond hearing when the only changed material condition since their first bond hearing is the duration of their detention." *Pinchi*, 2025 WL 2084921, at *4.  It did not address the burden of proof applicable under the present circumstances, where Petitioner has an approved Special Immigrant Juvenile classification, which "is a form of parole that confers eligibility for adjustment to [Legal Permanent Adjustment] status to noncitizen minors who have been abused, abandoned, or neglected."  *Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1085 (9th Cir. 2025); *see* 8 U.S.C. § 1101(a)(27)(J) (setting out definition of special immigrant juvenile); *see* 8 U.S.C. § 1255(h) (a special immigrant juvenile "shall be deemed . . . to have been paroled into the United States").

*Pinchi* went on to discuss why the calculus changes for an individual who had been paroled from immigration custody after their initial detention:

> Even assuming *arguendo* that the post-detention bond hearing provided under section 1226(a) provides constitutionally sufficient process for those noncitizens who have never previously been detained and released by DHS, [Petitioner's] circumstance is different.  [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [she] has a strong interest in remaining at liberty unless she no longer meets those criteria.  The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).

> Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States [ ]. ICE then released her on her own recognizance. As ICE was not authorized to release [her] if she was a danger to the community or a flight risk, the Court must infer from [her] release that ICE determined she was neither. [Her] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey*, 408 U.S. at 482, 92 S.Ct. 2593. The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. [She] justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention. Accordingly, [her] private interest in retaining her liberty is significant.

*Pinchi*, 2025 WL 2084921, at *4.

This reasoning contributed to the conclusion in *Pinchi* that a pre-deprivation hearing was required under *Mathews*. The court in *Pinchi* also placed the burden at any such hearing on the government to demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight. *Id.* at *7. Doing so is logical even for a post-detention custody hearing for the reasons articulated in *Pinchi*; namely that the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated Petitioner's re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.

Considering the findings above, the Court DENIES Petitioner's request to be released from custody, but GRANTS Petitioner's request to be provided an individualized bond hearing.

**ORDER**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 3) is GRANTED IN PART and DENIED IN PART;

2. Within five (5) days of this Order, Petitioner shall be afforded a constitutionally adequate bond hearing pursuant to 8 U.S.C. § 1226(a) before an Immigration Judge. The Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or risk of flight, and Petitioner shall be allowed to have counsel present. Respondents shall file a status report within seven (7) days of the date of this Order, confirming whether a bond hearing was held and, if so, the outcome of that hearing;

3. Petitioner's remaining requests are DENIED without prejudice to renewed argument on the motion for preliminary injunction;

4. Respondents are ORDERED TO SHOW CAUSE on or before November 26, 2025, as to why this Court should not issue a preliminary injunction on the same terms as this Order. On or before December 1, 2025 Petitioner may file a reply, if any, to Respondents' opposition;

5. Petitioner may file on or before November 26, 2025 a further brief in support of those portions of the requested injunctive relief that are denied in this Order. Respondents may file a reply to any such further brief on or before December 1, 2025; and

////
////
////
////
////
////

6. Pursuant to Local Rule 230(g), the Motion for Preliminary Injunction is submitted on the papers. If the Court subsequently concludes that oral argument is necessary, a hearing will be set and the parties notified accordingly.

IT IS SO ORDERED.

Dated:   **November 19, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC8–Singh.25cv1543.tro